[No. 10529. Department One. November 25, 1912.]

EMPIRE STATE SURETY COMPANY OF NEW YORK, *Respondent*, v. MORAN BROTHERS COMPANY, *Appellant*.[1]

INSURANCE — INDEMNITY INSURANCE — POLICIES — CONSTRUCTION — "KIND OF TRADE OR BUSINESS" — "KIND OF WORK" — EMPLOYEES INCLUDED. A policy of indemnity insurance giving an employer compensation for injuries to servants whose compensations are included in the schedule on which the premiums are based, liberally construed in favor of the insured, includes under the heads of the schedule "Kind of trade or business" and "Kind of Work" all who were engaged in the prosecution of the work at the specific places, and should not be restricted to the specific classes of artisans, as "ship builders," "blacksmiths" etc.; and also includes employees of a power, heat and light department, operating the entire plant; also, time-keepers whose duties took them about the places described, and drivers who were working about the premises part of the time, where the policy expressly excepted only the "Pres., Vice-Pres., Secty., Treas., & Clerical force."

INTEREST—ON BALANCE DUE ON CONTRACT—RECOVERY—DISPUTE AS TO AMOUNT. Interest is recoverable on earned premiums on an indemnity policy, from the date the balance becomes due, although the legal basis for the recovery was a subject of controversy; since the amount was due on a specific contract for the payment of money and was determinable by computation.

COSTS—PREVAILING PARTY—SEPARATE CAUSES OF ACTION—APPORTIONMENT OF COSTS. The plaintiff, as prevailing party, is entitled to costs, under Rem. & Bal. Code, § 476, although one of its three causes of action failed and defendant secured therein an offset against the amount due on the other causes of action; there being no statute authorizing apportionment of costs in such cases.

[1]Reported in 127 Pac. 1104.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 16, 1911, upon findings in favor of the plaintiff, in an action to collect premiums on policies of indemnity insurance, after a trial on the merits to the court. Affirmed.

*Wright & Kelleher* and *Edward W. Allen*, for appellant.
*Murphy & Wall*, for respondent.

PARKER, J.—This is an action to recover a balance claimed to be due as premium upon three insurance policies, issued by the plaintiff to the defendant, indemnifying the latter against loss from liability imposed by law upon it for damages on account of injuries or death suffered by its employees. A trial before the court without a jury resulted in findings and judgment in favor of the plaintiff, from which the defendant has appealed.

The questions involved have to do largely with the construction of those provisions of the policies which provide the measure for the amount of premium earned by respondent to be paid as the consideration for the indemnity furnished during the life of the policies.. The facts bearing upon this principal question are not in dispute, and may be summarized as follows:  Appellant, at the times here involved, was engaged in repairing and constructing ships and other water craft, and maintained a large plant for that purpose at Seattle.  In connection with and as a part of its plant, it maintained a sawmill, planing mill, lumber yard, machine shop, pattern shop, foundry, boiler shop, pipe shop, and a general light and power plant which furnished light and power for the whole plant.  All of these were maintained in comparatively close proximity to each other, though they were separated either by walls or by being in different buildings. They were all mutually dependent upon each other, and were operated to one common end, that is, the building and repairing of ships and water craft.  The policies here involved are numbered 3165, 3166, and 3167, respectively.  All of them

became effective on May 4, 1905, and all of them expired
on May 4, 1906.   The amount of premium to be paid in con-
sideration of the indemnity furnished by these policies was
by their terms based upon the entire amount of the compen-
sation paid by appellant to its employees, whose injuries or
death appellant was indemnified against during the life of
the policies.   Hence, the amount of premium earned could
not be finally determined until the expiration of the term.
Because of this, the sums paid upon the premium at the time
of the issuance of the policies were by their terms regarded
only as tentative estimates of the amounts of the premium
to be earned.   It is to recover a balance claimed to be due
upon premium so earned that this action was commenced and
prosecuted.   The provisions of policy No. 3165, bearing
upon the question of the amount of premium earned there-
under, are as follows:

THE EMPIRE STATE SURETY COMPANY, hereinafter called
the Company, hereby agrees to indemnify *Moran Bros. Company*,
hereinafter called the Assured, for a period of *12* months, beginning
on the *fourth* day of *May, 1905*, noon, and ending on the *fourth* day
of *May, 1906*, noon, standard time at the place where this Policy has
been countersigned,

AGAINST LOSS FROM THE LIABILITY IMPOSED BY LAW
UPON THE ASSURED, For damages on account of bodily injuries
or death, accidentally suffered while this Policy is in force, by any
employee or employees of the Assured, while within the factory,
shop or yard described in the Schedule, or upon the sidewalk or
other ways immediately adjacent thereto provided for the use of
such employees or the public, in and during the operation of the
trade or business described in the Schedule, including, however,
drivers and drivers' helpers mentioned in the Schedule when on duty
in the vicinity of the locations designated in the Schedule, subject
to the following conditions:   . . . . .

Condition B.   This Policy does not cover loss from liability for
injuries or death to or caused by—(1) Any person unless his com-
pensation is included in the estimate set forth in the Schedule, . .

Condition J.   The premium is based on the entire compensation
whether for salaries, wages, piecework, overtime or allowances
earned by the employees of the Assured during the period of this
Policy; whenever employees are compensated, in whole or in part,
by store certificates, board, merchandise, credits, or any other sub-

stitute for cash, the amount of compensation covered by such substitutes shall be included in the entire compensation on which the premium is based. If such entire compensation exceeds the sum set forth in the Schedule, the Assured shall immediately pay the Company the additional premium earned; if such compensation is less than the sum set forth in the Schedule, the Company will return the unearned premium, when determined; . . . .

### SCHEDULE.

The places where the factories, shops and yards are located, the kind of trade or business carried on at each such location, and the estimated number of employees, and the estimated compensation of employees at each such location, are as follows:

| Kind of trade or business. | Location of each factory, shop and yard. | Estimated average number of employees. | Estimated compensation for period of policy. | Premium rate per $100 of compensation. | Estimated amount of premium. |
|---|---|---|---|---|---|
| *Saw Mill Plaining Mill and Lumber Yard (Including Drivers & Drivers' Helpers).* | *Seattle, Wash.* | *35* | *$16,000* | *98c* | *$156.80* |
| | | *65* | *30,000* | *55c* | *165.00* |

The estimated compensation includes that of all persons employed whether compensated by salary, wages, for piecework, overtime or allowances and whether paid in cash, in whole or in part, in board, store certificates, merchandise, credits, or any other substitute for cash, at the above locations, for the purposes of the trade or business described herein to whom compensation of any nature is paid, including President, Vice-President, Secretary, Treasurer, Clerical Force and Drivers, except as follows:
*Pres., Vice-Pres., Secty., Treas. & Clerical force.*

The provisions of policy No. 3166, bearing upon the amount of premium earned thereunder, are the same as in policy No. 3165, except the tabulated portion of the schedule, which is as follows:

| Kind of trade or business. | Location of each factory, shop and yard. | Estimated average number of employees. | Estimated compensation for period of policy. | Premium rate per $100 of compensation. | Estimated amount of premium. |
|---|---|---|---|---|---|
| Boiler Makers, Ship Builders & Blacksmith (Shop only) | Seattle, Wash. | 250 | $100,000 | 73c | $730.00 |
| Machine Shop, Pattern Shop, and Foundry | | 180 | 90,000 | 44c | 396.00 |
| | | | | | $1,126.00 |

The provisions of policy No. 3167, bearing upon the amount of premium earned thereunder, are in substance the same as in policy No. 3165, except the tabulated portion of the schedule, which is as follows:

| Kind of work. | Place where work is to be done. | Estimated average number of employees. | Estimated compensation for period of policy. | Premium rate per $100 of compensation. | Estimated amount of premium. |
|---|---|---|---|---|---|
| Ship-wrights Repairing vessels. | Seattle, Wash. Puget Sound and vicinity. | 125 | $50,000 | 93c | $465.00 |
| Ship Builders Operating dry docks and repairing of vessels and construction of floating dry docks | | 30 | 15,000 | 1.33 | 196.50 |
| | | 20 | 10,000 | 1.33 | 133.00 |
| | | | | | $797.50 |

The above quotations are taken from the printed portions of the policies, except that the words and figures which we have italicized appear in the policies in typewriting.

The main question in the case, the solution of which will largely control the amount of the premiums earned under the policies, is, Do the words of the schedules under the heads "Kind of trade or business," and "Kind of work," refer generally to the nature of the work carried on at the places designated, so as to include all who are there engaged in the prosecution of the work; or are those words used only as names of specific trades, so as to confine their meaning to specific classes of artisans or workmen there employed. The trial court adopted the broader meaning; that is, that the words of the schedules under these heads refer to all who were employed in or about the work, trade, or business at the places designated, regardless of the particular kind of mechanics or artisans there employed; and computed the amount of earned premium upon the total compensation of all persons so employed. This view counsel for appellant contends is an erroneous construction of the language of the policies.

It seems to us that there is but little ground for arguing against the construction given to the policies by the trial court, in so far as the question involved has to do with the schedule designations of "saw-mill," "planing-mill," "lumber yard," "machine shop," "pattern shop," "foundry," and "operating dry docks." These schedule designations, it seems clear to us, do not limit the basis for computing earned premium to the amount of compensation of any particular class of workmen, but there is included therein all who are engaged in and about the work carried on in these several mills, shops, and places. The correctness of the trial court's construction of the policies is not so readily apparent in dealing with such schedule designations as "boiler makers," "ship builders," "blacksmiths" and "shipwrights." These words standing alone may seem to furnish good ground for

counsel's contention against the view adopted by the trial court; but they are to be viewed in the light of all the provisions of the contract in which they are used. We have noticed that appellant is indemnified against injuries or death suffered by "any employee or employees of the assured while within the factory, shop or yard described in the schedule;" that the basis for computation of premiums earned is the total compensation of all employees whose injuries or death appellant is indemnified against; that the schedule is headed "the place where the factories, shop or yards are located, the kind of trade or business carried on at each such location;" and finally that "the estimated compensation includes that of all persons employed . . . except as follows: pres., vice-pres., secty., treas., and clerical force;" the exception, as we have noticed, being in typewriting in each policy. It is worthy of particular notice that these excepted officers and employees are taken from a seeming all-embracing described class.

Reading the policies as a whole, and having in view the evident purpose of the contracts evidenced thereby, we are of the opinion that the learned trial court properly construed their provisions in determining the basis for computing the amount of premiums earned. We believe the general rule, calling for a liberal construction of insurance policies in favor of the insured, warrants the construction adopted by the trial court, having in mind that this question in its last analysis becomes a question of what is the extent of the indemnity furnished appellant by the policies. When that question is determined, it of course follows that the compensation of all employees whose injuries or death appellant is indemnified against furnishes the measure for determining the amount of premiums earned during the life of the policies. 1 May, Insurance (4th ed.), §§ 174, 175. We conclude that all employees in and about the several shops and places designated are within the terms of the policies, and that their entire compensation forms the proper basis for computation

of premiums earned. This being true, the learned trial court did not err in the view adopted by it, unless it erred in including the compensation of certain employees which, even under such construction, should not be included.

It is contended by counsel for appellant that the trial court erred in including in its computation employees of the power, heat and light department, such as engineers, firemen and electricians employed therein. While this work was carried on in what might be termed in a sense a separate plant —that is, it was physically separate, so far as its housing was concerned, from the other shops and places—yet it furnished power and light for the entire plant, and in that sense was a part of each particular department for all practical purposes, as much so as if it had been under the same roof with such department. Viewed in this light, these employees were in a sense employed in every department of the whole plant where light and power were used. These employees were classed by the court as belonging to "machine shop, pattern shop and foundry." This resulted in their being classed at the rate of 44c, as will be noticed by reference to the schedule in policy No. 3166. This rate is next to the lowest, and is considerably below the average of all the rates specified. Since we conclude that respondent was entitled to premium based upon the compensation of these employees, at least at some rate, it clearly was not prejudicial to appellant's rights that the rate was fixed at less than the average named in the policies.

It is contended that the court erred in taking into consideration, as a basis for its computation of premiums earned, the compensation of timekeepers; the argument being that these were necessarily included in the clerical force which we have noticed was excepted by the terms of the policies. It appears that at least some of these timekeepers were also workmen, and apparently all of them had to go among the workmen to some extent in the several shops and places in performing their duties. We think there was no error in the

court using the compensation of these employees as a part of the basis for computing the premiums earned.

It is contended that the court erroneously included the compensation of all the drivers, without making any attempt to segregate those drivers working upon the premises and those working away from the premises. It does not appear that there were any drivers who worked all the time away from the premises. We think the language of the policies above quoted readily shows that drivers were to be included, even though they did not actually work upon the premises all of the time.

What we have said relative to power plant employees and timekeepers disposes of other contentions as to particular employees. The case of *New Amsterdam Casualty Co. v. Mesker*, 128 Mo. App. 183, 106 S. W. 561, involved facts similar to those here involved. That case is in harmony with the views we have here adopted. Our views also find support in *Fidelity & Casualty Co. v. Lone Oak Cotton Oil & Gin Co.*, 35 Tex. Civ. App. 260, 80 S. W. 541, and *Hoven v. Employers' Liability Assur. Corp.*, 93 Wis. 201, 67 N. W. 46, 32 L. R. A. 388. We are of the opinion that the judgment was correctly rendered against appellant upon the merits.

In rendering judgment the trial court allowed interest at the legal rate from the 4th day of May, 1906, that being the date of the expiration of the policies and therefore the date upon which the balance of the premium became due. It is contended that this was erroneous because respondent was suing upon an unliquidated demand, and that therefore interest was not allowable prior to the actual entry of the judgment. This is not a suit for damages based upon tort, nor do we think it is an accounting; but it is a suit to recover an amount due upon a specific contract for the payment of money and the amount due was determinable by computation. It is true that the legal basis of the computation was a subject of controversy between the parties, but we think

that is immaterial. *Glover v. Rochester-German Ins. Co.*, 11 Wash. 143, 39 Pac. 380; *Parks v. Elmore*, 59 Wash. 584, 110 Pac. 381; *Dickinson Fire & Pressed Brick Co. v. Crowe & Co.*, 63 Wash. 550, 115 Pac. 1087; *Fell v. Union Pac. R. Co.*, 32 Utah 101, 88 Pac. 1003, 28 L. R. A. (N. S.) 1, and note; 22 Cyc. 1513. That a suit to recover a claim of this nature is a suit to recover a specific sum due upon contract, and hence not an accounting, is held in *Pacific Coast Casualty Co. v. Home Tel. & Tel. Co.*, 11 Cal. App. 712, 106 Pac. 262. We are of the opinion that the trial court was not in error in allowing interest.

Counsel for appellant contends that the trial court should have apportioned the costs in that court between it and respondent, since the cause was originally prosecuted upon three separate causes of action, each policy forming the basis of a cause of action; and that upon the computation of premium earned there was found to be a balance due to respondent upon only two of the policies, while there was found to be a refund due appellant upon another. This refund, being offset against the amount found due upon the other two, left a balance for which the judgment was finally rendered. It is clear, under Rem. & Bal. Code, § 476, that the prevailing party is entitled to costs. This rule seems to be without any exception growing out of there being several causes of action involved when recovery is had upon only some of them. Some states have statutes which make exceptions in such cases and provide for the apportioning of costs under such circumstances, but the rule seems to be, in the absence of such statute, that the prevailing party is regarded as that party only who has an affirmative judgment rendered in his favor at the conclusion of the entire case. 11 Cyc. 28. It follows that the taxation of costs in respondent's favor in the trial court was not erroneous.

We conclude that the judgment must be affirmed. It is so ordered.

MOUNT, C. J., GOSE, CROW, and CHADWICK, JJ., concur.